## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARLON FRAZIER,

    *Plaintiff,*                           Case No.: 21-cv-11193

v.

CITY OF DETROIT, a political
subdivision of the State of Michigan,
JAMES CRAIG, STACIE A. CYBULSKI,
and JOHN DOE,

    *Defendants.*

_____/

*There exist multiple cases related to this action,*
*including Rohr v. Detroit et al, 20-cv-11697,*
*and Detroit Will Breathe et al v. Detroit et al 20-cv-12363,*
*both pending before Hon. Laurie J. Michelson*

### COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, MARLON FRAZIER, by and through his attorneys,
JOHNSON LAW, PLC, and for his Complaint against Defendants, respectfully
alleges the following:

### JURISDICTION AND VENUE

1.    This is a civil action for money damages brought pursuant to 42 U.S.C.
§ 1983, and the First, Fourth, and Fourteenth Amendments to the United States
Constitution, and the laws of the state of Michigan.

2.     This Court has original and/or supplemental jurisdiction over Plaintiff's claims based upon the laws of the United States pursuant to 28 U.S.C. § 1331.

3.     The events that gave rise to this lawsuit took place in Downtown Detroit, within the jurisdiction of the United States Eastern District of Michigan.

4.     Venue is appropriate in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) since the Individual Defendants are employees of the Detroit Police Department, and the and the acts providing the legal basis for this Complaint occurred in the City of Detroit, County of Wayne, State of Michigan.

## PARTIES

5.     Plaintiff, Marlon Frazier, ("Frazier") at all relevant times herein was a resident of Grosse Pointe Woods, MI, and a citizen of the United States.

6.     Defendant, City of Detroit, ("Detroit") is a political subdivision of the State of Michigan and enacted the complained of policies followed by the individual defendants as outlined herein.

7.     Defendant, James Craig, ("Craig") at all times relevant herein, was the Chief law enforcement officer for the City of Detroit. Defendant Craig is the Chief of Police and is being sued in his individual and official capacities. Defendant Craig is liable in his individual capacity under a theory of supervisory liability.

8.     At all pertinent times, Defendants Detroit and Craig had an obligation to enact and enforce lawful and constitutional policies, procedures, protocols, and

customs for all employees, agents, and contractors, to follow, particularly those who are law enforcement. Further, Defendants Detroit and Craig had the affirmative duty to train and supervise all employees, agents, and contractors, including Defendant Officers, specifically to ensure that people such as Plaintiff do not have their rights violated.

9.      Craig and Detroit shirked this obligation and instead enacted and maintained policies, procedures, protocols, and customs, both written and unwritten, that demonstrated deliberate indifference to Plaintiff's constitutional rights and caused the herein-described harm.

10.     Defendant, Stacie A Cybulski, ("Cybulski") at all times relevant herein, was a law enforcement officer employed by City of Detroit. Defendant Cybulski, at all relevant times herein, was acting under color of state law. Defendant Cybulski is being sued in her individual capacity. Defendant Cybulski issued Mr. Frazier frivolous ticket number U56033220 and/or was the officer in charge of this frivolous ticket and contributed to the ticket being issued and;/or prosecuted for criminal charges which defendant Cybulski knew at the time were frivolous and baseless.

11.     Defendant John Doe ("John Doe") at all times relevant, was a law enforcement officer employed by City of Detroit. Johne Doe, at all relevant times, was acting under color of state law. John Doe utilized excessive force while arresting Mr. Frazier and is being sued in his individual capacity. John Doe's true identity is

3

unknown to Plaintiff, due primarily to Detroit's widespread practice, policy, custom, or protocol for officers utilizing excessive force on protesters to not identify themselves. Once John Doe's true identity becomes known to Plaintiff, Plaintiff will be in a position to amend this complaint and identify John Doe.

12.    All herein described acts of the individual Defendants were unlawful and unconstitutional and were done, purposely, deliberately, consciously, purposefully, sadistically, wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference.

13.    At all pertinent times, the individually named officers were acting in the course and scope of their employment as DPD officers, were acting under color of state law, were acting as trained by DPD and in accordance with DPD policies, procedures, protocols, and customs.

## FACTUAL BACKGROUND

14.    Plaintiff Marlon Frazier attended a protest in Detroit on Sunday, May 31, 2020 to protest police brutality.

15.    Mr. Frazier was exercising his First Amendment right to peaceful protest and was protesting in Detroit along with Black Lives Matter organizers, on the sidewalk near Comerica Park in Downtown Detroit.

4

16.     At about 8 p.m., an officer on a loudspeaker advised that Mayor Duggan put an 8 p.m. curfew in effect and that all protesters must disperse immediately.

17.     Almost immediately after this announcement, Mr. Frazier was attacked by John Doe who threw Mr. Frazier to the ground and then put a knee on Mr. Frazier's neck and back area.

18.     Mr. Frazier was held in that position for around thirty seconds during which it was extremely difficult for him to breathe and he was obviously panicked.

19.     Mr. Frazier was arrested and frivolously cited for loitering and trespassing. He and many others were detained for a few hours and then transferred to the Mound Facility where he was ticketed and released after about a half hour.

20.     The frivolous charges were dismissed nine months later in February 2021, without prejudice.

### *Detroit's Unconstitutional Retaliation Against Protesters*

21.     At the time of the incident described herein, protests of this nature were occurring and continued to occur across the country in response to rampant unchecked police brutality and misconduct nationwide. This misconduct and brutality are nothing new, but with more and more options to record and publish specific instances, it is more well-known than ever that these things actually do take place.

5

22.     While police are often present at protests for a variety of issues, the nature of these events specifically protested the police. Protesting the abuses of the law enforcement sector of the government is quintessential first amendment protected speech.

23.     Upon information and belief, in the late hours of May 30 and early hours of May 31, 2020, other Detroit Police Officers (DPO") shot rubber bullets at peaceful journalists. Daniel Debono shot three peaceful journalists who had not engaged in any violent, threatening, or unlawful behavior. Some journalists were even wearing their credentials and had their hands raised in the air when they were shot with rubber bullets.

24.      The Wayne County prosecutor charged Debono with multiple counts of felony assault. Upon information and belief, defendant Craig emphasized that it was the prosecutor, not his department, who decided to bring criminal charges.

25.     In fact, Defendant Craig has defended his officers' unlawful actions many times in the past, but especially as it relates to how they dealt with protesters. Such substandard leadership at the highest levels of DPD explains a lot about how DPD operates, but certainly demonstrates that Craig at least implicitly approved, authorized, or acquiesced in the unconstitutional actions of his subordinates, and set in place policies, procedures, protocols and customs that demonstrated deliberate

indifference to Plaintiff's rights and directly caused such unlawful and unconstitutional actions to take place.

26.    Also, earlier in the evening of May 30, 2020, DPO pepper sprayed free press reporters multiple times in just one night covering the protests.[1]

27.    The frequency in which excessive force was used on journalists, who were distinctly visible as members of the press, and peaceful individuals engaged in political protest, demonstrate the extent DPO were willing to use force to end peaceful protests and silence anyone and everyone present at these protests against the police.

28.    The high number of incidents in which unreasonable force was used on May 30, 2020 and May 31, 2020 evidences a policy, practice, and custom of Detroit and Craig to use or permit the use of excessive force on peaceful protestors. In the alternative, the high number of incidents of excessive force used on nonviolent nonthreatening individuals on the same evening without a legal basis demonstrates woefully inadequate training by Defendants Detroit and Craig.

29.    In response to the request for a preliminary injunction against City of Detroit for the excessive use of force by Detroit police officers under Defendant Craig's leadership, this Court granted the preliminary injunction barring Detroit

---

[1] Peter Bhatia, *Journalists at times targeted by police during protests in Detroit*, Detroit Free Press, https://www.freep.com/story/news/local/michigan/detroit/2020/06/01/journalists-targeted-police-protests-detroit/5302659002/.

Police Department from using several different forms of excessive force on peaceful protestors. *See Detroit Will Breathe v. City of Detroit*, 2020 U.S. Dist. LEXIS 162254.[2]

30.     The injunction contemplated force used by DPO from May 29, 2020 to June 2, 2020, including the time Plaintiff attended the protest where he was taken to the ground and kneed in the neck by Defendant John Doe as described herein.

31.     In response to this Court's order, Defendant Craig made statements to the media that the Court's Order will not change how his officers handle protesters because his officers had only used reasonable force on protestors.[3]

---

[2] Kanishka Singh, *Judge temporarily bans Detroit police from chokeholds, rubber bullets against protestors,* Reuters (Sep. 5, 2020, 1:54 AM), https://www.reuters.com/article/us-global-race-detroit/judge-temporarily-bans-detroit-police-from-chokeholds-rubber-bullets-against-protesters idUSKBN25W09S.

Steve Nealing, *Judge declines to lift restraining order preventing Detroit police from assaulting peaceful protestors,* Metro Times (Sep. 17, 2020, 11:24 AM), https://www.metrotimes.com/news-hits/archives/2020/09/17/judge-declines-to-lift-restraining-order-preventing-detroit-police-from-assaulting-peaceful-protesters.

[3] *Judge bans Detroit police tactics against protesters*, Associated Press (Sep. 4, 2020), https://apnews.com/article/e0b48e29c0a5a2a75860c6f2872a57a1.

Samuel Dodge, *'It changes nothing:' Detroit police chief defends department after judge issues restraining order*, MLive, (Sep. 7, 2020), https://www.mlive.com/public-interest/2020/09/it-changes-nothing-detroit-police-chief-defends-department-after-judge-issues-restraining-order.html

32.     Such insolence and stubbornness coming from the highest brass in DPD shows a great deal. Not only did DPO act as ordered and trained by Craig and Detroit, and not only did this court enjoin DPO from acting that way, but then defendant Craig dug in his heels as if to thumb his nose at this court, by making such a public proclamation.

33.     Clearly, defendant Craig, a final policy maker and supervisor for city of Detroit and its police department, expressly approved of the use of force by DPO on peaceful protestors, including the force used on Mr. Frazier and others.

34.     Defendant Craig has expressly condoned the use of excessive force on peaceful protestors by DPO. He has made numerous statements to the media condemning the protesters and supporting DPO's use of force even when the protesters, like Plaintiff, were peaceful, non-violent, and obeying lawful commands.

35.     For the most part, only when the victim of DPD's excessive force is a non-protester, or catches the act on camera, does Craig condemn his officers' use of force on protesters or individuals present at the protests against police misconduct.

36.     Craig defends the officers' use of force, in part, on the grounds that many protesters are not residents of the City of Detroit. But the protections of the First Amendment do not depend on the residence of any individual. American citizens have a clearly established right to protest the government.

37.     Recently, Judge Larry Williams Jr. dismissed criminal charges brought against 28 of the peaceful protesters. Upon information and belief, these cases were dismissed because the City of Detroit could not identify the officers involved and could not explain the absence of body camera footage that should have been taken at the time of the actual arrests.

38.     As a result of Defendants' herein described unlawful actions and inactions, Plaintiff suffered the constitutional violations as described herein.

<div align="center">

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FIRST AMENDMENT)**

***(Plaintiff Against Defendants)***

</div>

39.     Plaintiff incorporates herein all prior allegations.

40.     At all times relevant, Plaintiff was engaged in Constitutionally protected conduct of peaceful protest and providing assistance to peaceful protesters.

41.     By arresting and utilizing excessive force on Plaintiff, the defendants effectively deterred Plaintiff and other protesters from exercising their First Amendment rights to free speech and peaceful protest.

42.     Alternatively, by permitting and encouraging DPO use excessive force without a legal basis, Defendants Detroit and Craig created an objective "chilling effect," which effectively deterred Plaintiff and other protesters from exercising their First Amendment right to peacefully protest.

43.    Further, Defendants enacted and selectively enforced an unlawful curfew, which was not narrowly tailored to pass constitutional muster. This curfew was put in place by Defendant Craig and Detroit only to allow the defendant to selectively enforce it against those engaging in protected political protest.

44.    The objective chilling effect on the right to free speech was coordinated by Defendants Detroit, Craig and other supervisors. To this end, Detroit, Craig, and/or other high-level supervisors had DPO march throughout the streets of Detroit in full riot gear during the peaceful protests despite the absence of violent riots or an objective threat to the safety of the officers, encouraged and permitted DPO use of wildly excessive force including pepper spray and rubber bullets without a lawful basis, and turned a blind eye when they then leave their victims injured without calling for medical help or providing any medical assistance.

45.    These adverse acts by the Defendants were done specifically to deter Plaintiff and all peaceful political protesters from exercising their First Amendment rights to free speech and peaceful protest, particularly when it comes to protesting the actions of the police.

46.    Defendants actions were committed pursuant to the policies, practices, customs, and training of Defendants Detroit and Craig.

47.    As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FIRST AMENDMENT – RETALIATION)

### (*Plaintiff Against Defendants*)

48.     Plaintiff incorporates herein all prior allegations.

49.     At all times relevant, Mr. Frazier was engaging in constitutionally protected conduct of peaceful protest.

50.     In retaliation to this protected conduct, defendants arrested him and utilized excessive force on him.

51.     Such retaliatory action would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

52.     The retaliation was motivated at least in part by the protected conduct.

53.     There was a causal connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendant against Plaintiff.

54.     Defendant's actions were committed pursuant to the policies, practices, customs, and training of Defendants Detroit and Craig.

55.     As a proximate result of the illegal and unconstitutional acts of Defendants, Plaintiff was severely harmed.

12

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FOURTH AMENDMENT – UNLAWFUL ARREST AND MALICIOUS PROSECUTION)

### *(Plaintiff Against Defendants)*

56.     Plaintiff incorporates herein all prior allegations.

57.     Plaintiff was arrested and prosecuted despite there being no probable cause that Plaintiff had committed a crime or was about to commit a crime.

58.     Plaintiff suffered harm as a result.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FOURTH AMENDMENT – EXCESSIVE FORCE)

### *(Plaintiff Against Defendants)*

59.     Plaintiff incorporates herein all prior allegations.

60.     Defendants violated Frazier's right to be free from excessive force.

61.     Defendant John Doe took Frazier to the ground and kneed Frazier for an extended period, during which John Doe knew that Frazier was having a difficult time breathing.

62.     John Doe utilized far more force than necessary to effectuate an arrest.

63.     Defendant Cybulski then issued a ticket which she knew has no merit. By issuing this ticket, Cybulski caused Fraizer to be prosecuted for close to seven

13

months, during which Frazier's freedoms were limited by bond conditions and during which Frazier knew he faced possible jail time.

64.     Defendants' actions were committed pursuant to the policies, practices, customs, and training of Defendants Detroit and Craig.

65.     As a proximate result of the illegal and unconstitutional acts of Defendants, Plaintiff was severely harmed.

## COUNT V
## VIOLATION OF MICHIGAN STATE LAW
## (UNLAWFUL IMPRISONMENT)

### *(Plaintiff Against Defendants)*

66.     Plaintiff incorporates herein all prior allegations.

67.     Defendant knowingly restrained Frazier with the use or threatened use of a weapon or dangerous instrument, to wit an entire police utility belt full of weapons with the sole purpose of inflicting pain compliance techniques such as a baton, taser, handcuffs, flashlight, and/or firearm. Defendant then confined Plaintiff.

## COUNT VI
## VIOLATION OF MICHIGAN STATE LAW
## (ASSAULT AND BATTERY)

### *(Plaintiff Against John Doe)*

68.     Plaintiff incorporates herein all prior allegations.

69.     Defendant John Doe took Frazier to the ground and placed a knee in Frazier's neck/back area for an extended period.

14

70.     This was an offensive unwanted touching, which caused Fraizer to suffer harm.

71.     As a result, Plaintiff suffered injuries.

### COUNT VII
### VIOLATION OF MICHIGAN STATE LAW
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

#### (*Plaintiff Against Defendants*)

72.     Plaintiff incorporates herein all prior allegations.

73.     Defendants' conduct of arresting, hurting, and prosecuting Mr. Frazier was extreme and outrageous conduct, and beyond all possible bounds of decency.

74.     Defendants' acts were intentional.

75.     Defendants' conduct resulted in Frazier suffering severe and serious emotional distress.

76.     As a direct and proximate result of Defendants' conduct, Frazier has been injured and damaged.

### *MONELL* LIABILTY AGAINST THE CITY OF DETROIT

77.     A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

78.     At all times relevant herein, Detroit acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant Officers conduct. Specifically, Detroit

15

maintained a policy that permitted officers to use unreasonable and excessive force on unarmed, nonthreatening, peaceful political protestors.

79.    In the alternative and at all times relevant to this complaint, Detroit did not in fact have such a policy in place but failed to properly train and supervise Defendant Officers and other DPO, thereby demonstrating deliberate indifference to Plaintiff's rights.

80.    At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant Detroit, including the failure:

   a. To adequately supervise and train its officers and agents, including Defendant John Doe, the officer responsible for using excessive force on Plaintiff, thereby failing to adequately discourage further Constitutional violations on the part of its officers; and

   b. To adequately monitor and discipline its officers, including Defendant Officers; and

   c. To adequately investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by Defendant Detroit.

81.    The City failed to properly train its police officers on the proper standard for monitoring peaceful protests and the proper standard for using force

against a criminal suspect. On the night excessive force was used on Plaintiff, several other peaceful protesters and journalists were victims of excessive force through physical force, rubber bullets, and pepper spray.

82.     Detroit's failure to adequately supervise and train its police officers on the proper procedures for monitoring peaceful protests and the proper standard for using force against a criminal suspect caused Defendant John Doe to violate Plaintiff's Constitutional rights.

83.     Defendant Detroit has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, each of the Plaintiff's constitutional rights have been violated.

84.     As an alternate basis for liability against Defendant City of Detroit, the policy maker for Defendants, the mayor, or someone else in a policy making position, delegated full authority and/or empowered the individual Defendants.

85.     That delegation of authority by the actual policy maker of Defendant City of Detroit placed the individual Defendants in a policy making position, and the acts of the individual Defendants may fairly be said to be those of the municipality.

86.     Those acts therefore subject Defendant Detroit to liability for the constitutional violations of the individual Defendants.

87.     Defendant Detroit directly caused the constitutional violations suffered by Plaintiff and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City of Detroit.

88.     Upon information and belief, the City of Detroit has a de facto unwritten policy, custom, or procedure in place wherein its officers abuse people who exercise their rights in ways deemed offensive by officers.

89.     Based upon this policy, Plaintiff was attacked by John Doe who threw him to the ground and then put a knee on his neck and back area without a lawful basis.

90.     Upon information and belief, the defendant was not subjected to any disciplinary action despite his unlawful actions.

91.     To the contrary, Defendants Detroit vigorously defended the officers' actions, specifically defendant Craig has publicly supported the actions of his officers at this specific protest.

92.     Detroit does nothing meaningful to train, supervise, discipline, or control its officers to prevent the actions taken by the officers as described herein.

93.     Detroit's failure to supervise and train officers demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

18

94.     Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the plaintiff and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

95.     As a proximate result of the unconstitutional acts of Defendant City of Detroit, Plaintiff was harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Marlon Frazier, demand judgment and pray for the following relief, jointly and severally, against all Defendants:

    a.  Declaratory judgment that Detroit Police Department's policies are unconstitutional and an order enjoining DPD for continuing to utilize such tactics;

    b.  Full and fair compensatory damages in an amount to be determined by a jury;

    c.  Punitive damages in an amount to be determined by a jury;

    d.  Reasonable attorney's fees and the costs and disbursements of this action; and

    e.  Any such other relief as appears just and proper.

19

## <u>JURY DEMAND</u>

Plaintiff herby demand a trial by jury of all issues so triable, pursuant to Fed.

R. Civ. Pr. 38(b).

<div style="margin-left:40%">

Respectfully Submitted,

JOHNSON LAW, PLC

By:  */s/ Solomon M. Radner*
Solomon M. Radner, Esq. (P73653)
Madeline M. Sinkovich (P82846)
*Attorneys for Plaintiff*
535 Griswold St. Suite 2600
Detroit, MI 48226
(313) 324-8300
sradner@venjohnsonlaw.com
msinkovich@venjohnsonlaw.com

</div>

Dated: May 21, 2021