UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLON FRAZIER,

     Plaintiff,

v.

CITY OF DETROIT, JAMES CRAIG,
STACIE A. CYBULSKI, and JOHN
DOE,

     Defendants.

Case No. 21-11193
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [14]

Marlon Frazier says that, while he was protesting police brutality in downtown Detroit in May 2020, he was thrown to the ground and arrested by a Detroit police officer. After his arrest, Frazier was detained for a few hours and then taken to the Detroit Detention Center, where Officer Stacie Cybulski wrote him a ticket for loitering. Frazier was then detained for another half hour before he was released. He says he was subject to bond conditions for nine months until the charges were dropped in February 2021.

Frazier now sues the unknown officer who arrested him (Doe), Cybulski, the City of Detroit, and then Chief of the Detroit Police Department, James Craig. He sues them under 28 U.S.C. § 1983 for violating his First Amendment right to free speech and assembly, for retaliating against him in violation of the First Amendment, for arresting, detaining, and prosecuting him without probable cause in violation of

the Fourth Amendment, and for using excessive force against him in violation of the Fourth Amendment. Frazier also sues Defendants for state-law "unlawful imprisonment"[1] and Doe for state-law assault and battery.

Defendants move this Court to grant them a partial judgment on the pleadings. For the reasons given below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## I.

Because Defendants seek dismissal under Federal Rule of Civil Procedure 12(c), the Court accepts the factual allegations in Frazier's complaint as true and draws reasonable inferences from those allegations in Frazier's favor. *See Heinrich v. Waiting Angels Adoption Srvs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). Whether Plaintiff can ultimately prove these facts is an issue for another day.

On May 31, 2020, in the midst of the nationwide protests against police brutality for the murder of George Floyd, Marlon Frazier attended a protest in Detroit near Comerica Park. (*See* ECF No. 1, PageID.4.)

Around 8 p.m., says Frazier, an officer told protestors over a loudspeaker that Detroit Mayor Michael Duggan had enacted an 8 p.m. curfew for that night and advised protestors to leave. (*Id.* at PageID.5.)

---

[1] Frazier's complaint does not provide any statutory or common law cite for unlawful imprisonment under Michigan law. As the Court understands it, "unlawful imprisonment" is a crime under Michigan law. *See* Mich. Comp. Laws § 750.349b. So the Court will construe this claim as a claim for *false* imprisonment under Michigan law, which is a civil cause-of-action.

According to Frazier, "[a]lmost immediately after this announcement," unidentified officer John Doe threw him to the ground. The officer then held Frazier to the ground for about thirty seconds by placing his knee on Frazier's back and neck. (*Id.*) Frazier says this position made it difficult for him to breathe. (*Id.*)

After this, Frazier was arrested and cited for loitering and trespassing. (*Id.*) He was detained for a few hours before being transferred to the Detroit Detention Center on Mound Road. (*See id.*) At the facility, Officer Stacie Cybulski issued Frazier a ticket for loitering "which she knew ha[d] no merit." (*Id.* at PageID.13.) Frazier was then held for another half an hour before being released. (*Id.* at PageID.5.)

The charges against Frazier were dismissed without prejudice in February 2021. (*Id.*)

In time, Frazier sued Doe and Cybulski. (ECF No. 1.) He also sued James Craig, then Chief of the Detroit Police Department, because Craig "expressly approved of the use of force" by Detroit police on protesters, including Frazier. (*Id.* at PageID.9.) Frazier's support comes almost solely from isolated public comments Craig made to the press in response to a temporary restraining order from this Court in a related case. (*Id.* at PageID.8.) Specifically, Craig stated that his officers only used "necessary" force and only when protesters acted violently or resisted arrest. Samuel Dodge, '*It changes nothing:' Detroit police chief defends department after judge issues restraining order*, MLive, https://perma.cc/54J3-UTUD. According to Frazier, Craig also "selectively enforced an unlawful curfew" against those engaging in political protest. (*Id.* at PageID.11.)

Frazier also sued the City of Detroit, stating that the City "condoned and fostered" a policy or practice of allowing officers to use excessive force toward protestors. (*Id.* at PageID.15.) In the alternative, Frazier alleges that even if there was no such policy, the City is liable for failing to properly train and supervise its officers. (*Id.* at PageID.16.) The City is also liable, Frazier alleges, for the actions taken by policymaking individuals, such as Mayor Duggan or Craig, in their official capacity. (*Id.* at PageID.17.)

Frazier brings several claims against Defendants to this effect. Against all Defendants, Frazier claims violations of the First Amendment right to freedom of speech and to assemble (Count I); retaliation under the First Amendment (Count II); unlawful arrest and malicious prosecution under the Fourth Amendment (Count III); excessive force under the Fourth Amendment (Count IV); false imprisonment under Michigan law (Count V); and intentional infliction of emotional distress under Michigan law (Count VII). Against just Doe, Frazier also alleges assault and battery under Michigan law (Count VI). And against just the City of Detroit, Frazier brings a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Shortly after the complaint was filed, this Court declined to exercise supplemental jurisdiction over the state-law intentional infliction of emotional distress claim. (ECF No. 7.)

Before the Court is Defendants' motion for partial judgment on the pleadings. (ECF No. 14.) Given the clear record and extensive briefing, the Court considers this motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 12(c) provides that, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In deciding Rule 12(c) motions, courts use the standard governing Rule 12(b)(6) motions. *See Heinrich*, 668 F.3d at 403. As such, "this Court construes the complaint in the light most favorable" to Frazier and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.

Defendants present several, overlapping arguments in favor of granting judgment on the pleadings for some of Frazier's claims. The Court will address the arguments by claim, with the exception of probable cause.

### A. IIED

Defendants raised an argument for dismissing Frazier's intentional-infliction-of-emotional-distress claim. (ECF No. 14-1, PageID.97.) The parties are reminded that this Court declined to exercise supplemental jurisdiction over this claim and dismissed it without prejudice to refiling in state court. (ECF No. 7.) So the Court will not address any arguments related to dismissing Frazier's IIED claim.

### B. Probable Cause

Lack of probable cause is an essential element of many of Frazier's claims, including First Amendment retaliation (because Frazier alleges his arrest was

retaliatory), Fourth Amendment unlawful arrest, Fourth Amendment malicious prosecution, and false imprisonment under Michigan law.

Defendants challenge whether Frazier has properly pled lack of probable cause in three ways: first, they say Frazier stipulated to probable cause during the underlying state criminal proceedings; second, they say that on its face, Frazier's complaint shows that the officers had probable cause to arrest and detain him; and third, they say that Cybulski had probable cause to issue the citation to Frazier because she was entitled to rely on the representations made to her by other officers.

## 1.

Defendants argue that the Register of Actions for Frazier's criminal proceedings states that Frazier stipulated to probable cause. The Register of Actions was not attached or central to Frazier's complaint, however. So this Court may consider it as evidence at the 12(c) stage only if it is a public record. *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) ("[T]his court may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records.").

Further, statements within the Register of Actions cannot be uncritically accepted as fact. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012). For a statement in a public record to be accepted as true at the pleading stage, it must be that the statement is not "subject to reasonable dispute," which is akin to being fit for judicial notice. *See Omnicare*, 769 F.3d at 467; *Passa v. City of Columbus*, 123 F. App'x 694,

6

697 (6th Cir. 2005). Federal Rule of Evidence 201 governs judicial notice. It states, "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

For two reasons, the Court will not take judicial notice of the statement within the Register of Actions that Frazier stipulated to probable cause.

First, whether an officer had probable cause to detain or prosecute someone is subject to reasonable dispute. Frazier pled that the officers did not have probable cause for his arrest, detention, or prosecution. (ECF No. 1, PageID.13.) And Frazier states that he did not stipulate to probable cause. (*See* ECF No. 16, PageID.216.) Defendants concede that if the Register of Actions incorrectly states Frazier stipulated to probable cause, they withdraw this motion to the extent that it relies on that stipulation. (ECF No. 17, PageID.241.)

Second, probable cause cannot be "accurately and readily determined" from the Register of Actions. The Register of Actions comes from the 36th District Court Case Inquiry System. That system has a disclaimer stating, "the Court does not warrant the accuracy of the information contained herein . . . . The information available through the System is not considered an official court record . . . . The ROAs and any other information obtained from this site are not deemed certified records of the Court." *Look Up a Case / Balance*, 36th District Court, https://perma.cc/EVA5-93Z8. The accuracy of the source therefore can be reasonably questioned because the

Register of Actions is not a certified court record and itself states that it could be inaccurate.

Thus, because the stipulation to probable cause in the Register of Actions is neither free from reasonable dispute nor can it be determined from sources whose accuracy cannot reasonably be questioned, the Court declines to take judicial notice of that fact or consider it when deciding a motion that tests the sufficiency of the complaint's allegations. The Court will determine whether Frazier properly pled lack of probable cause without considering the stipulation in the Register of Actions.

## 2.

Defendants also argue that Frazier has not pled lack of probable cause. Both parties acknowledge that Mayor Duggan had issued an 8 p.m. curfew beginning on the night of Frazier's arrest. (*See* ECF No. 1, PageID.5 ("At about 8 p.m., an officer on a loudspeaker advised that Mayor Duggan put an 8 p.m. curfew in effect[.]").) According to Defendants, Frazier continued to protest until 9:49 p.m. in violation of the curfew. Thus, the officers had probable cause to arrest Frazier and ticket him for violating the curfew. (ECF No. 14-1, PageID.103–106.)

Frazier's allegations, however, paint a different picture. Frazier states that "[a]lmost immediately after" the announcement, Frazier "was attacked by [Officer] John Doe" and "arrested and frivolously cited for loitering and trespassing." (ECF No. 1, PageID.5.) He further alleges that he was "detained for a few hours and then transferred to the Mound Facility where he was ticketed and released after about a half hour." (*Id.*) Nowhere in the complaint does Frazier allege that he was protesting

8

until 9:49 p.m.—Defendants have introduced that new factual allegation via their motion. And construing the complaint's allegations in the light most favorable to Frazier, it is entirely plausible that Frazier stopped protesting after he was informed that there was an 8 p.m. curfew in place. Frazier's allegation that he was arrested "almost immediately after" being told to leave could suggest that Frazier was leaving the area and attempting to get home. And notably the curfew makes an exception for "[t]hose traveling to their home[.]" City of Detroit, Executive Order 2020–2: Declaration of local emergency and temporary mandate to maintain public safety, https://perma.cc/FHT8-FKW9.

Frazier's allegations plausibly show that officers did not have probable cause to arrest Frazier at the time he alleges he was arrested. Therefore, to the extent Defendants argue for dismissal based on there being probable cause for Frazier's arrest and prosecution, their motion is denied.

### 3.

Defendants make one final argument regarding probable cause in relation to the claims against Cybulski. They say that Frazier only alleged that Cybulski issued him the citation after he was arrested by another police officer. Accordingly, say Defendants, Cybulski was entitled to rely on the information given to her by other police officers, which gave her probable cause to issue the citation. So Defendants ask this Court to dismiss all claims against Cybulski that require a lack of probable cause.

Defendants are correct that an officer's knowledge and reliance on another officer's statements can constitute probable cause that a crime was committed. *See,*

*e.g.*, *Willis v. Neal*, 247 F. App'x 738, 742–43 (6th Cir. 2007) ("Many circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who made the arrest."). But the issue for Defendants is, even assuming that Cybulski relied on information from another officer to issue the ticket, it is not clear from the complaint that any officer had probable cause, much less that other officers relayed information to Cybulski that would give her probable cause to issue the ticket. *See id.* at 743 ("If [the instructing officers] did not have probable cause, then the arrest was in violation of the Fourth Amendment." (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568 (1971))). The complaint does not allege what facts Doe relied on when he arrested Frazier nor what facts Cybulski was made aware of when she issued the ticket. Instead, the complaint states that "Cybulski then issued a ticket which she knew has no merit." (ECF No. 1, PageID.13.) That suggests that Cybulski knew that there was no probable cause for Frazier's arrest, but issued the citation anyway.

The Court also notes that Defendants cited to certain cases analyzing probable cause in the context of qualified immunity. The Sixth Circuit has recognized a qualified-immunity defense based on the collective-knowledge doctrine. *See Brown v. Lewis*, 779 F.3d 401, 413 (6th Cir. 2015) ("In a case such as this where one officer's claim to qualified immunity . . . rests on his asserted good faith reliance on the report of other officers, we consider: (1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information

that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information.").

At this stage, though, not only does the Court not know what information was provided to Cybulski to determine these two elements, but Frazier alleges that Cybulski knew the ticket was frivolous. If that is true, then that would be a violation of Frazier's clearly-established rights. *See, e.g.*, *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 877 (6th Cir. 2020) ("A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment only when his deliberate or reckless falsehood results in arrest and prosecution without probable cause." (citing *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015))).

Further, when a qualified immunity defense is not readily determined from the facts in the complaint, it is disfavored as a basis to dismiss the complaint. *Osberry v. Slusher*, 750 F. App'x 385, 391 (6th Cir. 2018) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)); *Cf. Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021) (clarifying that qualified immunity should be evaluated at the motion-to-dismiss stage like any other affirmative defense such that a complaint that presents a constitutional claim that is on its face different than existing precedent or that requires recognition of a new constitutional right would be barred by qualified immunity). If the allegations Frazier makes are true, then Cybulski issued him a citation without probable

11

cause. No novel constitutional right would have to be recognized for the Court to find a constitutional violation.

So claims against Cybulski involving the absence of probable cause will not be dismissed at this time based on Cybulski's reliance on another officer's statements.

### C. False Imprisonment

Frazier brings a claim under Michigan law for false imprisonment against all Defendants. This claim will be dismissed as to Craig because he is entitled to absolute immunity under Michigan law and as to Cybulski because it is not plausible that she intended to detain Frazier by issuing him a citation for loitering.

Michigan law states "the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons . . . if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Mich. Comp. Laws § 691.1407(5). Michigan courts have applied this form of absolute immunity to city police chiefs. *See, e.g.*, *Petipren v. Jaskowski*, 833 N.W.2d 247, 252 (Mich. 2013).

The complaint shows that Craig was acting within the scope of his executive authority. Frazier states that Craig "enacted and maintained policies, procedures, protocols, and customs, both written and unwritten" that violated Frazier's rights. (ECF No. 1, PageID.3.) Specifically, he says that Craig implemented the curfew that led to his unconstitutional arrest. (*Id.* at PageID.11.) Craig's alleged orders or policies toward Detroit police officers were made in the scope of his authority as police chief. *See Petipren*, 833 N.W.2d 262 ("Because there is no genuine issue of material fact that

Jaskowski's executive authority encompassed the authority to preserve the peace . . . Jaskowski is absolutely immune[.]"). Frazier does not allege otherwise in his complaint or argue otherwise in his response to this motion. So the Court finds that Craig was the highest executive official in the Detroit Police Department and is immune from state-law tort liability for the policies he implemented in relation to the 2020 protests. Thus, the state-law false-imprisonment claim against Craig is dismissed.

Turning to the false-imprisonment claim against Cybulski, Frazier must show that Cybulski committed an act "with the intention of confining another[.]" *Moore v. City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2003). Frazier alleges that Cybulski issued him a ticket for loitering, and he was then detained for half an hour at the Detroit Detention Center. (ECF No. 1, PageID.5.) But Frazier has not pled that Cybulski issued the ticket with the intention of confining Frazier. Indeed, Frazier was already detained at the time the ticket was issued, so the plausible inference is that the ticket was intended to be the end of Frazier's detention, and not an extension of it. This is further supported by the ticket itself, which states that the "court will notify you of your court date[.]" (ECF No. 14-4, PageID.124.)[2] That statement indicates that after issuing the ticket, any related proceedings with the citation will

---

[2] Frazier mentions the ticket several times in his complaint, and it is the primary factual basis for his claim against Cybulski. Therefore, it is appropriate for the Court to consider the ticket when deciding a Rule 12 motion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

be determined by a court, and not by Cybulski or other Detroit police officers. So the false-imprisonment claim under Michigan state law is dismissed as to Cybulski as well.

### D. Malicious Prosecution

Having determined that Frazier properly pled lack of probable cause, the Court turns to two other issues Defendants raise as to the malicious-prosecution claim.

Among other things, to succeed on a malicious-prosecution claim, a plaintiff must show that they "obtained a *favorable termination* of the underlying criminal prosecution." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) (emphasis in original) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). The Supreme Court has recently clarified that to meet this requirement, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* at 1341.

Frazier pled that the "charges were dismissed nine months later in February 2021, without prejudice." Since Frazier was not convicted of the charges against him, he has met the favorable termination requirement for malicious prosecution.

Another element of a malicious-prosecution claim Frazier must show is that Defendants "made, influenced, or participated in the decision to prosecute." *See Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). In support of this element, Frazier argues that he has met this

14

element by alleging that Cybulski "started the criminal process by citing [Frazier] with a frivolous and baseless ticket." (ECF No. 16, PageID.218.)

As an initial matter, since Frazier argues that only his allegations against Cybulski satisfy the "participation" element of his malicious-prosecution claim, the claim against Craig and Doe will be dismissed.

As to whether Frazier's allegations plausibly show Cybulski "influenced" or "participated" in Frazier's criminal prosecution, the Court finds that they do. To make this showing, Frazier must plausibly allege that Cybulski's "misstatements and falsehoods . . . extended beyond [Frazier's] initial arrest and ultimately influenced" the continued deprivation of Frazier's liberty beyond the initial seizure. *Sykes*, 625 F.3d at 316. This includes making known misstatements to the prosecutor who decided to maintain charges against Frazier for nine months. *Id.; see also Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020) ("[L]iability extends to an officer who included falsehoods in her investigatory materials, knowing that prosecutorial reliance is likely, where those materials actually influenced the prosecutor's ultimate decision to bring charges.").

Frazier alleged that Cybulski issued him a "frivolous" ticket citing him for loitering and trespassing (ECF No. 1, PageID.4, 5) and that Cybulski "issued a ticket which she knew has no merit" (*id.* at PageID.13). This ticket was likely the basis for any further proceedings against Frazier. *See Wright v. City of Euclid, Ohio*, 962 F.3d 852, 876 (6th Cir. 2020) ("The 'tickets,' or 'traffic citations' as Flagg called them, were the official citations that appear to have been filed in Euclid Municipal Court that

charged Wright[.]"). And if Cybulski knew the ticket was issued without probable cause or was "frivolous," it is plausible that Cybulski "engaged in misrepresentation such that [she was] culpable in [her] involvement" with Frazier's prosecution. *See Wright*, 962 F.3d at 876 ("But an officer can also influence or participate in the decision to prosecute by falsely prompting or urging a prosecutor's decision to bring charges in the first place."). Cybulski's issuance of a frivolous ticket also plausibly shows that she aided "the decision in more than a passive or neutral way." *See Meeks v. City of Detroit, Michigan*, 727 F. App'x 171, 177 (6th Cir. 2018) ("And there must be some element of blameworthiness or culpability in the participation . . . . That is, truthful participation in the prosecution decision is not actionable[.]").

Case law also does not require that Cybulski be the primary cause of the prosecution against Frazier. Instead, "Prosecution must have been a reasonably foreseeable consequence of the defendant's conduct, and the conduct must have actually influenced the decision to prosecute." *Meeks*, 727 F. App'x at 178. Nothing in the complaint suggests that the prosecutor relied on anything else to independently support maintaining the charges against Frazier for nine months. *See id.* ("An indictment or the filing of charges by a prosecutor, if independently supported and insulated from the officer's influence, can break the chain of causation, unless the officer could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty."). The allegations here meet the "reasonably foreseeable" test, i.e., it is reasonably foreseeable that issuing a frivolous ticket would lead to Frazier's prosecution. And since the court is not aware

of any independent decision made by a prosecutor that would break the chain of causation, it finds that Frazier has plausibly alleged that Cybulski influenced his prosecution for the nine months the charges against him were pending.[3]

Thus, Frazier's malicious-prosecution claim against Cybulski will not be dismissed.

### E. Excessive Force

Frazier brings an excessive-force claim against all Defendants. (ECF No. 1, PageID.13.) He concedes that Cybulski, however, did not commit any acts of force against Frazier. (ECF No. 16, PageID.227 ("Plaintiff does not disagree that Defendant Cybulski did not use force on Plaintiff."); ECF No. 1, PageID.13.) So the excessive-force claim against Cybulski will be dismissed.

That leaves Defendants' arguments for dismissing Craig. Since Craig was "one step or more removed" from the alleged excessive force used against Frazier, the law requires Frazier to allege more than a "mere failure to act" to plausibly allege Craig was individually liable for an officer using excessive force. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Instead, Frazier must allege "some active unconstitutional behavior on the part of" Craig. *Id.* "Active" unconstitutional behavior goes beyond physical presence at the time of the violation or "put[ting] his hands on the injured party," however. *Id.* at 242. "At a minimum, the plaintiff must

---

[3] Defendants do not challenge whether Frazier has adequately pled that he suffered a deprivation of liberty as a result of his prosecution, so the Court does not address here whether pending charges and being subject to bond conditions for 9 months constitutes a deprivation of liberty.

show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

Frazier's allegations against Craig, taken as true for purposes of this motion, plausibly show that Craig "encouraged or condoned the actions of [his] inferiors." *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Frazier alleges that Craig encouraged his officers to use any force necessary during the May 2020 protests. According to Frazier, Craig has "defended his officers' unlawful actions many times in the past, but especially as it relates to how they dealt with protesters." (*Id.* at PageID.6.) At this stage, the Court cannot say that Craig did not authorize or knowingly acquiesce in the officer's unconstitutional behavior where Frazier alleges Craig "expressly condoned the use of excessive force on peaceful protestors" and "had DPO march throughout the streets of Detroit in full riot gear during the peaceful protests [and] encouraged and permitted DPO use of wildly excessive force including pepper spray and rubber bullets without a lawful basis[.]" (ECF No. 1, PageID.9,11.) *Cf. Graves v. Malone*, 810 F. App'x 414, 421 (6th Cir. 2020) ("In cases where we have found supervisory liability for excessive force, it has been where the government official ordered, or at least implicitly authorized, the use of force."); *Ramage v. Louisville/Jefferson Cnty. Metro Gov't*, 520 F. App'x 341, 348 (6th Cir. 2013) ("Aside from the initial decision to bring in the SWAT team, Det. Jackman had no control over the specific actions of the officers. He was not present when they secured the Ramage home and he did not instruct them as to the level of force they should employ."). Further, Frazier alleges that Detroit police used excessive force against

18

protestors on May 30 and the morning of May 31. (ECF No. 1, PageID.6.) So it is plausible that by the evening of May 31, when Frazier attended the protests, Craig knew how his officers were responding to protestors, and encouraged the continuation of their use of force during subsequent protests.

Frazier's allegations that Craig enforced policies within the Detroit Police Department that encouraged the use of excessive force against protesters could also "be reasonably expected to give rise to the sort of injuries that occurred[.]" *See Peatross*, 818 F.3d at 244 (finding that allegations that defendant enforced department policies, did not punish officer misconduct, failed to take action in the face of growing use of excessive force by officers, and "rubber stamped" officer misconduct sufficiently alleged knowing acquiescence and a causal connection for a supervisory liability claim).

The Court notes that the complaint also cites to public comments made by Craig stating that the officers' use of force during the May 2020 protests was "necessary" and "not excessive." (*See* ECF No. 1, PageID.8); *see also* Samuel Dodge, '*It changes nothing:' Detroit police chief defends department after judge issues restraining order*, MLive, https://perma.cc/54J3-UTUD.[4] These comments were made in September 2020, several months after Frazier's alleged constitutional injuries

---

[4] Plaintiffs are taking some liberties with the use of this article. In a related case brought by Detroit Will Breathe and some of its members, the parties negotiated in good faith to resolve the issuance of an injunction during the pendency of the case. Chief Craig was commenting that an injunction against the use of certain force against peaceful protestors was consistent with their operations and thus, something they could agree to. What the parties vigorously dispute, however, is whether the protestors were all peaceful and whether the officers used excessive force.

occurred. So it is not clear how these comments would indicate that Craig authorized the use of force against Frazier on the night in question. The comments do not indicate that Craig had any prior knowledge about the officers' actions at the May 31 protests such that he knowingly acquiesced in their behavior that night. The comments are also general comments, and not specific to Frazier or the protests on May 31. They generally indicate that Detroit police officers were using force only against protestors that were resisting or otherwise endangering the public. These comments therefore ostensibly do not apply to Frazier, who did not plead that he did anything in resistance to the officers' actions, nor do they show that Craig engaged in active unconstitutional behavior toward protestors on May 31.

At this stage, Frazier's allegations plausibly allege that Craig knew how officers were responding to the 2020 protests against police brutality and directed officers to use a certain level of force against peaceful protestors. However, to ultimately prove this claim, Frazier must provide evidence that Craig "encouraged the specific incident of misconduct or in some other way directly participated in it[.]" *See Troutman v. Louisville Metro Dept' of Corrections*, 979 F.3d 472, 488 (6th Cir. 2020). In other words, Frazier must show that Craig "directly contributed to [his] injury," and not just that Craig defended all DPD officers in the press several months after Frazier was injured. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).

But at this stage of the case, the excessive-force claim against Craig under a theory of supervisory liability will not be dismissed.

### F. Fourth Amendment False Arrest

Frazier also complains of false arrest under the Fourth Amendment by all Defendants. Defendants dispute whether Frazier's complaint plausibly alleges such a claim against Craig and Cybulski.

Frazier has plausibly alleged that Craig is liable for unlawful arrest under a theory of supervisory liability. According to Frazier, Craig issued a policy or directive to his officers telling them to enforce the curfew by "selectively" arresting protestors. (ECF No. 1, PageID.11.) He also alleges that, apart from encouraging these arrests, Craig defended the officers' actions in public statements after the protests. The fair inference from these allegations is that Craig (at the very least) knowingly acquiesced in the alleged constitutional violations that occurred at the protest. If Frazier was indeed arrested without probable cause, and Craig ordered his officers to arrest all protesters regardless of individualized suspicion, then Craig's "execution of his job functions" plausibly caused Frazier's injury. *See Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

As for Cybulski, Frazier's arguments are less than clear. Cybulski did not initially detain Frazier—she issued him a ticket after he was arrested by Doe. (*See* ECF No 1, PageID.5, 13.) But in his response, Frazier argues that by alleging that Cybulski issued him a ticket which she knew had no merit, he alleged that Cybulski "arrested and cited" him. (ECF No. 16, PageID.222–223.) Frazier further argues that his retaliation claim against Cybulski is premised on arresting and prosecuting him, which suggests that he claims that Cybulski participated in his arrest by issuing him

a frivolous ticket. But Frazier also later argues that Frazier "was not arrested by Defendant Cybulski." (ECF No. 16, PageID.218.)

The Court cannot surmise whether Frazier believes Cybulski participated in his arrest, or whether her issuance of the citation was instead the beginning of his prosecution. This distinction matters, as a claim for malicious prosecution is "entirely distinct from that of false arrest." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (emphasis in original) (citing *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). False arrest is based on the *absence* of legal process whereas the malicious-prosecution tort is instead based on the "*wrongful institution* of legal process." *Id.* So it seems like Cybulski's single act of writing the ticket cannot give rise to both a malicious-prosecution and false-arrest claim against her. Either the citation began the wrongful institution of legal process or it was part of Frazier's arrest.

Further, a false-arrest claim under federal law "requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020). And though "[i]n some circumstances, liability can attach to non-arresting officers," that is most often the case when a non-arresting officer provides the arresting officer with a false basis for executing a warrant. *See Gardner v. Evans*, 920 F.3d 1038, 1064 (6th Cir. 2019). As discussed previously, Frazier has plausibly shown that Doe lacked probable cause to arrest him. But no allegation connects Cybulski to Doe's arrest of Frazier. The complaint does not state that Cybulski ordered Doe to arrest Frazier or provided Doe with information leading to Frazier's arrest. And the Court has identified no case where

an officer who was not present for the arrest itself and is only alleged to have participated *after* the arrest is liable for false arrest. *See, e.g.*, *Webb v. U.S.,* 789 F.3d 647, 667 (6th Cir. 2015) (holding that without allegations that the defendants "actively participated" or "implicitly authorized" the false arrest, the defendants cannot be liable for false arrest); *Givens v. Loeffler*, No. 21-2119, 2021 WL 6848962, at *3 (6th Cir. Sept. 17, 2021) ("Because Givens failed to sufficiently contest Loeffler's evidence indicating that he did not arrest Givens, the district court properly granted the defendants' motion for summary judgment on Givens's false arrest claim.").

So the Court dismisses the false-arrest claim against Cybulski.

## G. Retaliation

Frazier's retaliation claim against all Defendants is premised on his arrest and the excessive force used against him. (ECF No. 1, PageID.12 ("In retaliation to this protected conduct, defendants arrested him and utilized excessive force on him.").) Since Frazier has not alleged that Cybulski used force toward him, nor did she participate in or influence his arrest by Doe, the First-Amendment-retaliation claim against Cybulski is dismissed.

## IV. Order

In sum, the following claims will be dismissed:

- Excessive force against Cybulski

- False arrest under the Fourth Amendment against Cybulski

- First Amendment retaliation against Cybulski

- False imprisonment under state law against Craig and Cybulski

- Malicious prosecution against Craig and Doe

The following claims remain:

- As to Cybulski, Fourth Amendment malicious prosecution and First Amendment right to freedom of speech and assembly.

- As to Craig, Fourth Amendment false arrest, Fourth Amendment excessive force, First Amendment retaliation, and First Amendment right to freedom of speech and assembly.

- As to Doe, Fourth Amendment false arrest, Fourth Amendment excessive force, false imprisonment under state law, assault and battery under state law, First Amendment retaliation, and First Amendment right to freedom of speech and assembly.

- As to the City of Detroit, any claim encompassed by *Monell*.

SO ORDERED.

Dated: June 6, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE